UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOB DAWSON, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> PORCH.COM, *et al*., <br><br> Defendants. | CASE NO. 2:20-cv-00604-RSL <br><br><br> ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE TO AMEND |

This matter comes before the Court on "Plaintiffs' Motion for Leave to File Second Amended Complaint." Dkt. # 96. Having reviewed the memoranda submitted by the parties, the proposed pleading, and the remainder of the record, the Court finds as follows:

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a "strong policy in favor of allowing amendment" (*Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)), and "[c]ourts may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, *etc*." (*Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708

ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND - 1

F.3d 1109, 1117 (9th Cir. 2013) (internal quotation marks and alterations omitted)). The underlying purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

In February 2020, Bob Dawson and 146 other individuals filed this lawsuit seeking statutory damages and injunctive relief for defendants' alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Dkt. # 1. Plaintiffs alleged that defendants, in their attempts to sell customer leads to home improvement contractors, scraped third-party web pages to obtain contact and other information regarding the contractors, including their company names, locations, and phone numbers. Dkt. # 1 at ¶¶ 15-16 and 29. Defendants then generated a unique, sequential "ProviderID" for each contractor, storing his/her/its information under the ProviderID number and sending automated text messages to the stored telephone numbers. Dkt. # 1 at ¶¶ 17-19. Plaintiffs attached to their complaint the information defendants had scraped for Bob Dawson, clearly showing his phone number among the data collected from third-party websites. Dkt. # 1-4. Plaintiffs alleged that they did not provide their phone numbers to defendants and did not otherwise agree to receive their automated text messages. Dkt. # 1 at ¶ 28.

Plaintiffs amended the complaint in November 2020 in order to consolidate ten related actions that were then pending in various jurisdictions around the country. The TCPA claim is now being pursued on behalf of 942 individuals. In addition, the 185 Washington-resident plaintiffs assert claims under the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060, the Washington Automatic Dialing and

Announcing Device Statute ("WADAD"), RCW 80.36.400, the Washington Do Not Call Statute ("WDNC"), RCW 80.36.390, and the Washington Consumer Protection Act ("WCPA"), RCW 19.86.090. The TCPA claims rely on allegations that are similar to those asserted in the original complaint, including an attachment showing the data that had been scraped from the web regarding Bob Dawson. Dkt. # 36 at ¶¶ 16-20 and 31; Dkt. # 36-2.

In April 2021, the United States Supreme Court held that simply maintaining a database of phone numbers which are then used to automatically send text messages does not constitute use of an "automatic telephone dialing system" ("ATDS") as that term is defined in the TCPA. *Facebook, Inc. v. Duguid*, _ U.S. __, 141 S. Ct. 1163 (2021). The Court found that "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id.* at 1170. Because Facebook merely stored and dialed existing telephone numbers, it was not using an ATDS. *Id.* at 1171. The following year, the Ninth Circuit was asked to decide whether the use of a random number generator to assign the order in which stored telephone numbers would be called satisfied the requirements of an ATDS. *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022). The answer was no. "We hold that an [ATDS] must generate and dial random or sequential *telephone* numbers under the TCPA's plain text." *Id.* at 1231 (emphasis in original). *See also Brickman v. U.S.*, 56 F.4th 688 (9th Cir. 2022) (rejecting argument that use of a random number generator to determine the order in which numbers were stored and dialed implicates the TCPA).

ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND - 3

The Court notes that, contrary to the Ninth Circuit's discussion in *Borden*, 532 F.4th at 1233, neither the statutory text nor the Supreme Court's *Duguid* decision is wholly supportive of this interpretation of the TCPA. The statute defines an ATDS as equipment which uses a random or sequential number generator to store *or* produce telephone numbers. Production of a telephone number is not, therefore, the *sine qua non* of an ATDS: storage of telephone numbers using a random or sequential number generator would also suffice. *Duguid* acknowledges that, "as a matter of ordinary parlance, it is odd to say that a piece of equipment 'stores' numbers using a random number 'generator,'" but goes on to explain that patents for such devices have been granted since 1988. 141 S. Ct. at 1171-72. The Supreme Court suggested in a footnote that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time." *Id.* at 1172 n.7.[1] *Borden*'s holding that an ATDS "must generate and dial random or sequential telephone numbers" may therefore be an overstatement. 53 F.4th at 1231 (emphasis omitted).

Nevertheless, the Ninth Circuit's determination that the random or sequential generation of numbers to code or organize existing telephone numbers does not involve the

---

[1] In addition, the Federal Communications Commission, which is tasked with promulgating the regulations that implement the TCPA, has confirmed its view that equipment that has the capacity to dial telephone numbers without human intervention is an ATDS regardless whether the telephone numbers were randomly or sequentially generated or came from a calling list or database. *See* In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15399 (2012); Rules and Reguls. Implementing the Tel. Consumer Protection Act of 1991, 23 F.C.C. Rcd. 559 ¶¶ 12–13 (2008); Rules and Reguls. Implementing the Tel. Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14092, ¶ 133 (2003).

ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND - 4

use of an ATDS is binding on this Court. *Borden*, 53 F.4th at 1234. In *Borden,* the plaintiff specifically alleged that eFinancial used a sequential number generator for two purposes: (1) to generate sequential numbers designated as "LeadID," each of which corresponded to a unique telephone number and (2) to determine the order in which the stored telephone numbers would be dialed. *Id.* at 1232. The allegations were deemed insufficient. To the extent plaintiffs seek to amend their complaint to allege that defendants used a sequential number generator to generate a unique ProviderID under which it stored plaintiffs' telephone numbers, Dkt. #96-1 at ¶ 62, the amendment is futile under *Borden* and *Brickman*.

      Plaintiffs also seek to add allegations regarding the method by which defendants obtained their phone numbers. Plaintiffs allege that they did not provide their phone numbers to defendants,[2] that they had no relationship with defendants, that the messages they received were generic and automated, and that defendants made calls and sent text messages to prohibited numbers, such as fire departments. They argue that such allegations raise a plausible inference that a random number generator was used to generate their telephone numbers. Dkt. # 96-1 at ¶¶ 49-61. But the current operative pleading expressly alleges that defendants obtained plaintiffs' telephone numbers, whole and intact, from third-party sources by scraping websites like Yelp.com, YellowPages.com, and BBB.org.

---

[2] Where an ATDS has not been used, the separate issue of consent is irrelevant. *Borden*, 53 F.4th at 1232, n.1. The plaintiff in *Duguid* had not given Facebook his phone number, nor was there any evidence that he consented to the text messages it sent him. 141 S. Ct. at 1168. The lack of consent played no part in the Court's analysis of whether use of an ATDS had been adequately alleged.

ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND - 5

The proposed pleading alleges that defendants scraped data from third-party websites, but omits "telephone numbers" from the description of the data obtained, instead asserting that the phone numbers were randomly generated. "Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (internal quotation marks and citation omitted). *See also Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 452 (9th Cir. 2018); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).[3] In the circumstances presented here, plaintiffs are attempting to delete specific factual allegations that would otherwise defeat the asserted cause of action in favor of conclusory and implausible recitations of statutory elements. Because the proposed

---

[3] There are undoubtedly situations in which the Court would exercise its discretion to allow leave to amend even if the proposed amendment would contradict the original complaint. If, for example, a plaintiff were initially uncertain about the facts for one reason or another and subsequently discovered that her allegations were inaccurate, amendment would be appropriate. *See PAE Gov't Servs., Inc. v. MPRI, Inc*., 514 F.3d 856, 858-59 (9th Cir. 2007) (noting that amendments "to conform to these newly discovered realities" are not "sham pleading" and cannot be dismissed solely on the ground of inconsistency). Judge Canby has recognized that *PAE* and *Reddy* are irreconcilable in that the former holds that inconsistent allegations, standing alone, are not a basis for dismissing the amended pleading while the latter flatly prohibits subsequent allegations that are inconsistent with the original pleading. *Shirley v. Univ. of Idaho*, 800 F.3d 1193, 1195 (9th Cir. 2015). This uncertainty in Ninth Circuit law does not preclude a finding of futility here.

   In this case, the proposed amendment is futile because the new allegations not only contradict detailed factual assertions in the operative pleading, but they are also implausible under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). At the time the operative pleading was filed, plaintiffs knew how defendants had obtained their telephone numbers, having delved into defendants' databases and copied files showing that the data that had been scraped from various identified websites. Plaintiffs made corresponding, specific allegations of fact. Following the Ninth Circuit's decision in *Borden*, however, those allegations became inconvenient because they did not give rise to a plausible inference that the telephone numbers had been randomly or sequentially generated. Plaintiffs now seek leave to delete allegations of scraping from the proposed pleading, replacing them with assertions that defendants randomly generated plaintiffs' telephone numbers. In plaintiffs' current telling, defendants scraped the web to find the business names, locations, *etc*. of home improvement contractors, but chose not to copy their telephone numbers. Instead, defendants' equipment either used the "hundreds of millions of datapoints" it had collected about the contractors to randomly produce their phone numbers (Dkt. # 96-1 at ¶ 51) or it randomly generated telephone numbers and then linked those numbers with the other data points that had been obtained from the third-party websites (Dkt. # 96-1 at ¶ 59). Given that intact telephone numbers were included on the same webpages from which defendants scraped the rest of the data, the bald assertion that the telephone numbers at issue here were randomly generated and somehow linked to the scraped data is simply implausible.

ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND - 6

allegations do not give rise to a plausible inference that an ATDS was used to generate plaintiffs' telephone numbers, the amendment would be futile.

In reply, plaintiffs argue that obtaining unverified telephone numbers from third-party websites is "truly random" because defendants had no business relationship with plaintiffs and had no way of confirming that the information they copied was accurate. Dkt. # 100 at 6. While both of these statements may be true, the fact that a database of phone numbers may contain errors does not mean that the numbers were generated using a random or sequential number generator.

Finally, plaintiffs appeal to common sense and Congressional intent to argue that defendants' conduct has the potential for causing the exact kinds of harm that the TCPA was enacted to prevent. Such appeals "cannot overcome the clear commands of §227(a)(1)(A)'s text and statutory context," however. *Duguid*, at 1172. "That Congress was broadly concerned about intrusive telemarketing practices . . . does not mean it adopted a broad autodialer definition." *Id.* Congress was clearly focused on the unique problems posed by the use of random or sequential number generator technology and chose to prohibit the use of those devices. *Id.* That the statute, as written, has not kept up with technology and does not effectively restrict all nuisance calls is a matter to be taken up with Congress, not the courts. *Id.* at 1172-73.

//

TO AMEND - 7

For all of the foregoing reasons, plaintiffs' motion to amend (Dkt. # 96) is DENIED with regards to the proposed changes to the ATDS allegations. However, plaintiffs may, within fourteen days of the date of this Order, file and serve an amended complaint that deletes the causes of action under 47 C.F.R. 64.1200(a)(7) and the two Washington statutes mentioned at Dkt. # 96 at 3, n.2.

Dated this 11th day of June, 2023.

*MMS Lasnik*
Robert S. Lasnik
United States District Judge